
FILED
FEB 23 2017
Clerk, U.S District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| PROGRESSIVE NORTHWESTERN INSURANCE COMPANY,<br><br>Petitioner,<br><br>vs.<br><br>SHAWNA JENSEN, MEGAN COLLINS, LEONARD PIEDALUE and WARREN JAMES,<br><br>Respondents. | CV –16–29–M–DLC<br><br>ORDER |

Before the Court are the parties' cross-motions for summary judgment in this declaratory judgment action. On August 17, 2016, Petitioner Progressive Northwestern Insurance Company ("Progressive") filed its motion for summary judgment, arguing that it has discharged its duties to Respondents. On September 27, 2016, Respondents Shawna Jensen, Megan Collins, Leonard Piedalue, and Warren James responded to Progressive's motion and filed their cross-motion for summary judgment, seeking entry of judgment in their favor. For the reasons explained below, the Court denies each party's motion.

## BACKGROUND

On the evening of August 27, 2015, Respondent Shawna Jensen was

traveling west on Montana Highway 200 in her 2002 GMC Yukon when she crossed the center line. On the other side of the dividing line was a dump truck driven by Respondent Leonard Piedalue. As Piedalue moved toward the shoulder, he felt the impact of Jensen's Yukon, "and then [he] was in the air." (Doc. 31 at 2.) Within a matter of moments, the Yukon struck a second vehicle, Respondent Warren James's Ford F-150 Extended Cab, which was following Piedalue's dump truck in the eastbound lane. Both Piedalue and James suffered extensive damages.

Petitioner Progressive insured Jensen's Yukon at the time of the collisions. The policy in play provided liability coverage with limits of "$300,000 combined single limit each accident" subject to the other terms and conditions of the Progressive policy. The policy does not define "accident." Both Piedalue and James have demanded a separate $300,000 limit. Following receipt of Respondents' claims, Progressive accepted liability and paid a single limit of $300,000 to be divided between Piedalue and James.

The parties dispute whether the collisions between Jensen's vehicle and those driven by Piedalue and James constitute one accident or two. In addition to the legal question of policy interpretation, some facts remain in dispute, particularly: the time between the collisions, the location of the second collision, and Jensen's actions and control of the Yukon between the collisions. The

relevance of these disputes is discussed below.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a factual dispute is material, the Court looks to substantive law; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). In diversity cases, the Court applies the substantive law of the forum state. *Kabatoff v. Safeco Ins. Co. of Am.*, 627 F.2d 207, 209 (9th Cir. 1980).

## DISCUSSION

Petitioners argue that, under the unambiguous terms of the policy, only one accident occurred, regardless of the specific facts in dispute. Respondents argue both: (1) that the policy is ambiguous and should be construed in favor of coverage; and (2) that under Montana insurance law, two accidents occurred. The Court disagrees that the policy is ambiguous, but it determines that the question of how many accidents occurred cannot be resolved without an adjudication of relevant factual disputes.

I.  **Interpretation of the Term "Accident"**

The parties dispute whether the term "accident" is ambiguous such that it should be construed in favor of coverage. The Court agrees with Petitioner that even if the term could be construed as ambiguous in other circumstances, that ambiguity would be irrelevant to this Order.

"An ambiguity exists where the contract, when taken as a whole, is reasonably subject to two different interpretations. Whether an ambiguity exists is determined through the eyes of 'a consumer with intelligence but not trained in the law or insurance business.' " *Hardy v. Progressive Specialty Ins. Co.*, 67 P.3d 892, 896 (Mont. 2003) (internal citations omitted). Where an ambiguity exists, it "must be construed in favor of the insured and in favor of extending coverage." *Id.*

Here, the policy's insuring agreement states, "[Progressive] will pay damages for bodily injury and property damage for which an insured person becomes legally responsible because of an accident." (Doc. 1–1 at 2.) The policy does not define the term "accident," but the use of the singular indefinite article "an" clearly demonstrates that whatever an accident is, one accident triggers Progressive's duties under the policy.

Respondents cite to *Ike v. Jefferson National Life Insurance Co.* for the

proposition that the Montana Supreme Court views the term "accident" as ambiguous. 884 P.2d 471, 476 (Mont. 1994). Even accepting Respondents' reading of *Ike*, however, does not lead to a determination that "accident" is ambiguous in the circumstances presented. In *Ike*, the question was whether a death was accidental under a life insurance policy when the deceased died from pulmonary aspiration of vomit and the insurer produced no evidence that the death was caused by the use of alcohol—in which case, under the terms of the policy, it would not have been accidental. *Id.* at 472–73. Here, the issue is simply whether there was one accident or two, and the fact that the policy does not define the term has no bearing on its resolution.

In fact, a different Montana case resolves Respondent's claim that the ambiguity of the term "accident" entitles them to summary judgment. In *Infinity Insurance Co. v. Dodson*, the Montana Supreme Court wrote that "a reasonable person in the position of an insured would understand that the term 'accident' as used throughout the policy refers to a *singular* event where bodily injury or property damage results from the ownership, maintenance, or use of a vehicle." 14 P.3d 487, 493 (Mont. 2000) (emphasis added). *Infinity* is not squarely on point, and it does not resolve the dispute between the parties. However, it reinforces that the issue is not one of policy interpretation.

## II. Number of Accidents Involved

The ultimate issue is whether one or two accidents occurred. Petitioner argues that only one accident occurred because the two collisions had only one cause—Jensen crossing the center line. Respondents assert that the relationship between the two collisions is more attenuated. The Court determines that each party is correct in arguing that the other party has not met its burden on summary judgment. A question of fact remains—what caused the second collision?

The parties' arguments center on three cases. *American National Property & Casualty Co. v. Stirling*, decided by this Court in 1999, is the most factually similar, and it favors Respondents. 28 Mont. Fed. Rpt. 149 (D. Mont. 1999). Petitioner, on the other hand, leans heavily on *Crow v. Safeco Insurance Co. of Illinois*, which—though distinguishable on the facts—is more recent, having been decided in 2013. No. CV 12–71–M–DLC, 2013 WL 989822 (D. Mont. March 13, 2013). Most importantly, a Montana Supreme Court case, *Heggem v. Capitol Indemnity Corp.*, decided in 2007, explains the difference between *Stirling* and *Crow* and provides the framework the Court must use to analyze the parties' arguments. 154 P.3d 1189 (Mont. 2007).

Under Montana law, the number of accidents that occurred depends on what event or events caused the collisions. *See Heggem v. Capitol Indem. Corp.*, 154

P.3d at 1195. Montana has joined the majority of states "in interpreting the term 'occurrence' in liability policies which limit the insurer's liability to a specified amount per 'occurrence' " by "view[ing] it from the perspective of causation—referring to the cause or causes of the damage or injury—and not the number of injuries or claims." *Id.* Respondents argue that *Heggem* should not apply because it is factually inapposite and because the policy—not Montana law—should guide the Court's decision. Although the facts of *Heggem* are indeed distinguishable, Montana's adoption of the cause theory cannot be distinguished away.[1] The Court is bound to apply Montana law.

Respondents argue that *Heggem* should have no bearing on the applicability of *Stirling*. *Stirling* involved strikingly similar facts: a driver crossed the centerline before striking two separate vehicles in rapid succession, and the issue was whether there was one "occurrence" or two. 25 Mont. Fed. Rpt. at 150–51. This Court determined that there had been two separate occurrences, largely because it found that the policy was ambiguous as to the meaning of the term

---

[1] Respondents have also suggested that *Heggem* is inapplicable in part because the issue here involves a definition of the term "accident" rather than an "occurrence." This argument is unsuccessful. In *Heggem*, the term "occurrence" was defined as "an accident." 154 P.3d at 1193–94; *see also Crow*, 2013 WL 989822, at *3 ("Although the policy at issue in *Heggem* was an occurrence-based policy, unlike [the policy in *Crow*], this distinction is not dispositive. . . . [C]ourts have equated the terms 'accident' and 'occurrence' when faced with precisely this issue.").

"occurrence." *Id.* at 150–57. Although *Stirling*'s factual similarity would make it a useful guide, Montana law has changed meaningfully since it was decided. *See Crow*, 2013 WL 989822, at *3 ("Crow's argument that [*Stirling*] controls also fails because Montana adopted the cause theory in *Heggem* after *Stirling* was decided.").

Thus, the issue is narrowed to whether, as Petitioner argues, both accidents share a single cause—Jensen's crossing over the center line. Neither Montana nor this Court has decided a factually similar case following *Heggem*. *Heggem* itself involved a child's death triggered by a fatal dose of diphenhydramine; the Montana Supreme Court rejected the arguments of the child's parents that there were multiple occurrences because all alleged injuries were caused by the child's death. 154 P.3d at 1196–97. The facts of *Crow* are a little more complicated, but the case is similar to *Heggem* in that multiple injuries were caused by what was clearly a single event. In *Crow*, the insured driver struck a car driven by Michael Crow, the plaintiff; six days later Crow struck a separate vehicle. Crow alleged that the first accident resulted in a head injury, causing the second accident. 2013 WL 989822, at *1.

Neither *Crow* nor *Heggem* is factually analogous. Here, the parties disagree whether it was inevitable that Jensen would eventually strike James when she

initially crossed over into the lane of oncoming traffic. Unlike the unsuccessful parties in *Heggem* and *Crow*, Respondents have not alleged that all injuries were caused by a single event. Remaining factual disputes are relevant to the question of whether the two collisions constituted a single accident or two separate accidents. Particularly important is the issue of whether, at the time of the second impact, Jensen had some level of command over the Yukon—as Respondents claim—or had been thrown into the passenger seat—as Petitioner argues. Each party has produced some evidence supporting its theory, and the Court cannot determine which is correct without infringing upon the province of the jury. A factual dispute remains, and neither party is entitled to summary judgment.

Accordingly, IT IS ORDERED that

(1) Petitioner's Motion for Summary Judgment (Doc. 17) is DENIED; and

(2) Respondents' Motion for Summary Judgment (Doc. 24) is DENIED.

Dated this 23rd day of February, 2017.

Dana L. Christensen, Chief Judge
United States District Court